[Civ. No. 12706. First Dist., Div. Two. Oct. 24, 1944.]

MOISE GIRARD, Respondent, v. COMMERCIAL STANDARD INSURANCE COMPANY, Appellant.

Cooley, Crowley & Supple for Appellant.

Charles J. Janigian and James F. Brennan for Respondent.

SPENCE, J.—This is a companion case of *Girard* v. *Moser*, No. 12739, *ante*, p. 480 [152 P.2d 508], the opinion in which last mentioned case has been this day filed. The two appeals

arose out of the same action. This appeal is one by defendant Commercial Standard Insurance Company from an order of the trial court, dated February 8, 1944, granting plaintiff's motion for a new trial as to the defendant company. Said order of February 8, 1944, did not specify the grounds upon which it was made. A further statement of facts is required before discussing the questions raised on this appeal as these questions are different from those raised on the appeal in the companion case.

The accident occurred on February 15, 1941. Plaintiff's original complaint was filed on May 28, 1941. The defendants named in that complaint were Lloyd G. Moser, doing business under the firm name and style of Lloyd G. Moser Trucking Co., Robert L. Moser, First Doe, Second Doe and Third Doe. Said complaint alleged facts sufficient to state a cause of action against defendant Lloyd G. Moser, the defendant employer, and defendant Robert Moser, the defendant driver, but it alleged no facts purporting to state a cause of action against any of the fictitious defendants. After the cause was at issue, defendant Lloyd G. Moser died on September 9, 1941, and the trial court thereafter entered its order on November 5, 1941, dismissing the action as to said defendant. About one year later and on October 31, 1942, plaintiff obtained an order permitting him to file an amended complaint, which amended complaint was filed on the same day. In said pleading, plaintiff alleged that he had ascertained that the true name of the defendant sued as First Doe was Commercial Standard Insurance Company, which company had issued to Lloyd G. Moser, deceased, its policy of casualty insurance which had been deposited with the Railroad Commission pursuant to the requirements of the Highway Carrier's Act (Stats. 1935, chap. 223, Deering's Gen. Laws, 1937, Act 5129a). It was further alleged "that said insurance policy insured the plaintiff herein and/or any member of the general public against any loss or damage that may result to plaintiff or any one member of the general public by reason of the negligent operation . . ." of the vehicle used by Lloyd G. Moser, deceased. The allegations of the original complaint relating to negligence and damages were included in the amended complaint and plaintiff prayed for judgment against all defendants, including the Commercial Standard Insurance Company. The defendant company interposed a demurrer to the amended

complaint upon general grounds and also upon the ground the plaintiff's alleged cause of action, if any, against the defendant company, was barred by the provisions of subdivision 3 of section 340 of the Code of Civil Procedure. The demurrer was overruled and the defendant company answered denying the material allegations of the complaint and setting up several defenses including those urged by way of demurrer and also the defense that the policy issued by the defendant company was a limited policy of public liability insurance which insured only Lloyd G. Moser, deceased, and that the death of said deceased was a bar to any action against deceased or the defendant company.

Upon the trial, the policy of insurance was admitted in evidence over the objection of the defendant company but the defendant company's motion for nonsuit was thereafter granted and judgment was entered in its favor on November 16, 1943. The trial proceeded as to defendant Robert L. Moser and, as indicated in the opinion on the appeal in the companion case, resulted in a judgment in favor of defendant Robert L. Moser, which judgment was entered on January 26, 1944. Plaintiff made a motion for a new trial as to the defendant company and an order was entered on February 7, 1944, denying said motion. On the following day, however, the trial court entered an order vacating the order of February 7, 1944, and granting the motion for new trial as to the defendant company. The last mentioned order of February 8, 1944, is the order from which this appeal was taken. The appeal in the companion case was taken from a separate order of March 9, 1944, granting plaintiff's motion for a new trial as to the defendant driver, Robert L. Moser.

It is apparently conceded on this appeal that the motion for new trial was granted upon the ground of alleged error in law in granting the motion for nonsuit of the defendant company. It is apparently further conceded that if the defendant company's motion for nonsuit was properly granted, then the order of the trial court granting plaintiff's motion for a new trial as to the defendant company should be reversed. In other words, unlike the situation presented on the appeal in the companion case, we are not dealing here with the question of whether there was a substantial conflict in the evidence relating to issues of negligence and contributory negligence. It was decided on the other appeal that there

was such substantial conflict and we are concerned here solely with the question of whether the uncontradicted evidence directed to the alleged liability of the defendant company would have supported a judgment in this action in favor of plaintiff and against the defendant company in the event that the trial court had decided the other issues in favor of plaintiff and against the defendant driver.

The defendant company contends that the evidence was wholly insufficient for that purpose and that its motion for nonsuit was therefore properly granted, first, because plaintiff had no cause of action against the defendant company prior to a recovery against the insured and, second, because even if it be assumed that such cause of action against the defendant company arose at the time of the happening of the accident, it was barred by plaintiff's failure to bring an action against the defendant company within one year. The discussion of these contentions requires a consideration of the pertinent provisions of the defendant company's policy of insurance and of the Highway Carrier's Act (Stats. 1935, chap. 223 as amended by Stats. 1937, chap. 722.)

The named assured in the policy was Lloyd G. Moser, now deceased. It was agreed by the defendant company that it did thereby "insure the assured . . . against direct loss or expense arising or resulting from claims upon the assured for damages . . ." within the limits specified in the policy. The defendant company further agreed to investigate accidents and to settle claims when the company deemed it advisable and to defend any suit brought against the assured unless or until the defendant company should elect to effect a settlement thereof. The policy further provided "No action shall lie against the company to recover any loss or expense unless . . . such action shall be brought by the assured . . . for loss and/or expense actually sustained and paid in money by the assured after the amount thereof shall have been fixed and rendered certain, either by final judgment against the assured after actual trial of the issue or by agreement between the parties with the written consent of the company, . . . Nothing in this policy shall be construed to create any right in the injured . . . to join this company as a party to any cause of action brought against the assured under this policy."

Attached to the policy was a "Standard Form of Endorse-

ment Prescribed by the Railroad Commission of the State of California" which read in part as follows: "In consideration of the premium provided for in the policy of which this endorsement is made a part the Company agrees that within the classes of coverage provided by the policy it will pay any final judgment rendered against the insured for bodily injuries to or death of any person or persons . . . arising out of the ownership, maintenance or use of any vehicle covered by the policy; that the judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment; . . . ." It is not claimed that there was any named insured in the policy other than Lloyd G. Moser or that the policy contained any so-called omnibus clause insuring against liability the defendant driver or any person other than Lloyd G. Moser.

The above mentioned policy was filed with the Railroad Commission pursuant to the provisions of sections 5, 6 and 7 of the Highway Carrier's Act (Stats. 1935, chap. 223 as amended by Stats. 1937, chap. 722). Said sections read as follows:

"§ 5. The Railroad Commission shall, in granting permits under the provisions of this act, require the highway carrier to procure, and continue in effect during the life of the permit, adequate protection, as required in section 6 hereof, against liability imposed by law upon such highway carrier for the payment of damages for personal bodily injuries (including death resulting therefrom) in the amount of not less than five thousand dollars on account of bodily injuries to, or death of, one person; and protection against a total liability of such highway carrier on account of bodily injuries to, or death of, more than one person, as a result of any one accident, in the amount of not less than ten thousand dollars; and protection in an amount of not less than five thousand dollars for one accident resulting in damage or destruction of property whether the property of one, or more than one claimant.

"§ 6. The protection required under section 5 shall be evidenced by the deposit with the Railroad Commission, covering each vehicle used or to be used under the permit applied for, of a policy of public liability and property damage insurance, issued by a company licensed to write such insurance in the State of California; or of a bond of a surety company licensed to write surety bonds in the State of California; or of a per-

sonal bond, with such sureties as the Railroad Commission shall find adequate to guarantee the protection prescribed in section 5 hereof; or it shall be evidenced by a trust fund in the amount of fifteen thousand dollars, to be held in trust by some institution or person acceptable to the Railroad Commission; or by a combination of any of or all of said methods in such manner that the aggregate of the protection or funds available therefor shall equal the principal sum of not less than fifteen thousand dollars, and such highway carrier shall have the option of the method to be used in obtaining such protection, and may change from one method to another from time to time, with the consent of the Railroad Commission. With the consent of the Railroad Commission a copy of an insurance policy, duly certified by the company issuing it to be a true copy of the original policy, or a photostatic copy thereof, or an abstract of the provisions of said policy, or a certificate of insurance issued by the company issuing such policy, may be filed with the Railroad Commission in lieu of the original or a duplicate or counterpart of said policy.

"§ 7. The protection against liability as outlined in section 5 hereof must be continued in effect during the active life of the permit, and the policy of insurance, surety bond or personal bond shall be not cancellable on less than ten (10) days written notice to the Railroad Commission. The Railroad Commission shall have power to establish such rules and regulations as may be necessary to carry out the provisions of sections 5 to 7, inclusive.''

A reading of the policy issued by the defendant company leads to the conclusion that it is quite similar in all provisions which are material in this discussion to the policy which was before this court in *Severns* v. *California Highway Indem. Exchange,* 100 Cal.App. 384 [280 P. 213]. In that case, the insured was a jitney-bus operator who had deposited an insurance policy with the Police Commission as required by ordinance. The insured operator died as a result of injuries sustained in the accident in which certain passengers were injured. Severns, who was one of the injured passengers, brought an action against the insurer upon the theory that there was a direct and primary liability on the part of the insurer and that an action might be maintained by the injured plaintiff against the insurer despite the fact that the insured had died before plaintiff's claim had been reduced to judg-

ment against the insured. A judgment of nonsuit in favor of the insurer was affirmed on appeal in an opinion which discussed numerous authorities dealing with the general subject. The decision and the reasoning of the opinion in the Severns case were subsequently approved by the Supreme Court in *Ritter* v. *California Highway Indemnity Exch.*, 214 Cal. 791 [4 P.2d 145]. The Supreme Court there said on pages 791 and 792:

"The very question here presented, involving the same insurance policy and growing out of the same accident, has recently been decided by the District Court of Appeal. (*Severns* v. *California Highway Indemnity Exchange*, 100 Cal.App 384 [280 P. 213].)

"In that case it was held that the insurance policy carried by Euphrat was simply an undertaking to pay any final judgment which the injured person might obtain against the assured, and that the obtaining of such final judgment constituted a condition precedent to any action which the injured person might have against the insurance carrier.

"We are in entire accord with this conclusion and the reasoning by which it was reached. It would serve no useful purpose to repeat in this opinion what was said by the District Court of Appeal in the Severns case.

"On the authority and reasoning found in *Severns* v. *California Highway Indemnity Exch.*, supra, the judgment appealed from is reversed."

We are of the opinion that the decision and reasoning in the Severns case are controlling here. That case was cited in the defendant company's opening brief but it was not mentioned in the brief of plaintiff. While the ordinance involved in the Severns case did provide that "Said policy shall guarantee payment of any final judgment rendered against said owner or lessee of said 'jitney bus' within the limits herein provided . . . ," and while no similar express provision is found in the act involved here, we believe that in this regard the purpose and effect of the two enactments were the same. It may be conceded that the provisions of the applicable enactment should be read into the policy filed thereunder but we find nothing in the act involved here which would alter the conclusion that the requirements of the act were satisfied by the filing of a policy, such as was filed in the present case, pro-

viding for the payment of any final judgment which the injured person might obtain against the assured.

Plaintiff relies entirely upon the requirement of the act that the highway carrier should procure "adequate protection . . . against liability imposed by law upon such highway carrier . . . ," but the term "liability imposed by law," when used in connection with liability insurance, is ordinarily construed as meaning liability imposed in a definite sum by a final judgment against the assured. (25 Words and Phrases 65). There is no language in the act or in the policy before us which provides that the required insurance should inure to the benefit of the public. Under these circumstances, the controlling principles are set forth in *Van DerHoof* v. *Chambon,* 121 Cal.App. 118 [8 P.2d 925] at page 131, where the court said: "Nowhere in the policy is there any express contract of direct liability to third persons. An intent to make an obligation inure to the benefit of a third party must clearly appear in the contract and if there is any doubt about it, it should be construed against such intent (*Wilson* v. *Shea,* 29 Cal.App. 788 at 790, [157 P. 543]). Throughout the policy Chambon is insured against loss and this question of loss cannot arise until it has been established by a final judgment. In all the cases in California that we have been able to find which permit the joining of the Insurance Company, there was an express provision in the policy or an ordinance under which it was written providing that the policy should inure to the benefit of the public." The quoted language sufficiently distinguishes *Grier* v. *Ferrant,* 62 Cal.App.2d 306 [144 P.2d 631] and *Milliron* v. *Dittman,* 180 Cal. 443 [181 P. 779], upon which plaintiff relies.

Under the rules enunciated in the authorities cited, we cannot escape the conclusion that the policy before us "was simply an undertaking to pay any final judgment which the injured person might obtain against the assured, and that the obtaining of such final judgment constituted a condition precedent to any action which the injured person might have against the insurance carrier." We are therefore of the opinion that the trial court properly granted the defendant company's motion for nonsuit and that it erred in granting plaintiff's motion for a new trial as to the defendant company. It therefore becomes unnecessary to discuss the defendant com-

pany's argument relating to the second and alternative ground for a reversal above mentioned.

The order dated February 8, 1944, granting plaintiff's motion for a new trial as to defendant Commercial Standard Insurance Company, is reversed.

Nourse, P. J., and Goodell, J. pro tem., concurred.

A petition for a rehearing was denied November 22, 1944, and respondent's petition for a hearing by the Supreme Court was denied December 21, 1944. Curtis, J., and Carter, J., voted for a hearing.