304 P.2d 715]

[Civ. No. 22005.   Second Dist., Div. One.   Dec. 17, 1956.]

ALBERTA WILLIAMS et al., Appellants, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

H. L. Richardson for Appellants.

E. D. Yoemans and Walt A. Steiger for Respondent.

FOURT, J.—This is an action for breach of contract. The demurrer of defendant Pacific Electric Railway Company to the plaintiffs' third amended complaint having been sustained, and plaintiffs having failed to amend, the judgment was entered in favor of said defendant upon its motion for judgment of dismissal under section 581, subdivision 3, of the Code of Civil Procedure. Plaintiffs have appealed.

The contract in question was entered into by the union representatives of the appellants with the respondent, who was ceasing the operation of certain of its trains upon which the plaintiffs had been performing services in the capacity of car cleaners. Respondent had entered into an agreement with the Metropolitan Coach Lines for the transfer of its passenger services to the latter company.

It was provided in the agreement between respondent and the union of which plaintiffs were members, that "[i]f, as a result of the sale, any employe of the Pacific Electric Railway Company, hereinafter referred to as the 'company', is displaced, that is, placed in a worse position with respect to his compensation and rules governing his working conditions, and is unable, in the normal exercise of his seniority rights under existing agreements, rules and practices, to obtain a position in his craft or class with the Company or with the Metropolitan Coach Lines producing compensation equal to or exceeding the compensation he received in the position from which he was displaced, he shall be paid a monthly displacement allowance equal to the difference between the monthly compensation received by him in the position in which he is retained and monthly compensation received by him in the position from which he was displaced."

The agreement further provided as follows:

"In*t* the event that any dispute or controversy arises with respect to ·the protection afforded by*t* the foregoing conditions which cannot be settled by the Company and the authorized representatives, of the employe or employes involved, within thirty (30) days after the controversy arises, *it may be referred,* by either party, to an arbitration com-

mittee selected in the following manner: One (1) to be selected by the representative of the employes and one (1) to be selected by the Company. These two shall endeavor by agreement within ten (10) days after their appointment to select the third arbitrator. In case they are unable to reach agreement within ten (10) days, the National Mediation Board will be requested to appoint such third arbitrator who shall be the Chairman of the Board. The decision of a majority of the Board shall be required and shall be final and binding on both parties. The salary and expenses of the third or neutral arbitrator shall be borne equally by the parties to the proceedings. All other expenses shall be paid by the party incurring them, including the compensation of the member of the board of arbitration selected by such party." (Emphasis added.)

The present controversy arose because respondent refused to pay to the plaintiffs the displacement allowance which they contended was owing to them under the terms of the agreement. Plaintiffs did not allege in their third amended complaint that they had duly performed all of the conditions of the contract on their part to be performed, and failed to allege that the dispute had first been submitted to arbitraion in accordance with the agreement.

The sole question for determination is whether plaintiffs were required to submit to arbitration as provided for in the agreement before resorting to the courts.

Appellants contend that the word "may" as used in the arbitration provisions of the agreement is permissive only, and not mandatory, and that therefore they were not required to exhaust that remedy before instituting suit.

It has been held in cases involving collective bargaining agreements that when it is provided that a dispute *may* be referred to arbitration, either party has an option to arbitrate if he so desires but, should he desire to litigate, he must first submit to arbitration and exhaust that remedy.

In *Thompson* v. *St. Louis-San Francisco Ry. Co.*, 113 F. Supp. 900, the court had under consideration a claim based on the so-called Washington Job Agreement wherein the railroad undertook to guarantee to its employees that they would not be displaced in a worse position with respect to their compensation and rules governing their working conditions as a result of the sale or consolidation, and if any were placed in a worse position or wholly deprived of employment, cer-

tain payments would be made to them by the railroad. The agreement provided, in part, as follows: "In the event that any dispute or controversy arises . . . in connection with . . . application or enforcement of any of the provisions of this agreement . . . which is not composed by the parties thereto within thirty days after same arises, *it may* be referred by either party for consideration and determination to a Committee . . . ." (Emphasis added.) The court said (at page 903) in deciding the case, ". . . where contracting parties agree that either 'may' resort to a designated tribunal for an adjustment of grievances, they must exhaust such remedy before resorting to the courts for redress."

In *Transcontinental & Western Air, Inc.* v. *Koppal*, 345 U.S. 653 [73 S.Ct. 906, 97 L.Ed. 1325], the defendant discharged the plaintiff by compelling him to resign for the abuse of the sick leave provisions of his employment contract. The contract contained provisions for the determination of grievances, including provisions for a fair hearing before a designated representative of the company, a written decision by such representative, and if that decision was not satisfactory, "appeal *may* be made in accordance with the procedure prescribed in Step 3." (Emphasis added.) Step 3 provided for an appeal to the chief operating officer of the company and if the decision in Step 3 was not satisfactory to the union the "matter *may* then be referred by the system general chairman, acting for the union, to the system board of adjustment or, by mutual agreement, to arbitration." (Emphasis added.) Without availing himself of the contract provisions for successive appeals to the employer's chief operating officer and to the system board of adjustment, the plaintiff brought action in the federal court to recover damages for his wrongful discharge. The Supreme Court held that under the applicable state law (Missouri) the plaintiff was required to show exhaustion of administrative remedies under his employment contract in order to sustain his cause of action.

*Barker* v. *Southern Pac. Co.*, 214 F.2d 918, was an action for damages for an alleged wrongful discharge of appellant, who was employed by appellee under a collective bargaining agreement. The contract provided that if an employee who was disciplined or dismissed were dissatisfied, he should be given a hearing provided a written request therefor was filed within 10 days after the date of notice of discipline or dismissal. Appellant failed to file the written request required

within the 10-day period. The court stated (pp. 919-920) : ''It is argued by appellant that notwithstanding the contractual provisions, an employee need not exhaust his administrative remedies unless required so to do under the applicable state law. It is questionable whether this doctrine is applicable where, by contract, the request for a hearing has been made a condition precedent to the bringing of a law suit. *Wallace v. Southern Pac. Co.*, 106 F.Supp. 742. But even if such is the correct doctrine, California law would be applicable and controlling. See *Transcontinental & Western Air, Inc.* v. *Koppal*, 345 U.S. 653 [73 S.Ct. 906, 97 L.Ed. 1325]. It is clear by that law that administrative remedies must be exhausted prior to taking recourse to the courts. 2 Cal.Jur.2d 304 et seq. Admin. Law Sec. 184 et seq. and cases cited therein.''

In *Cone* v. *Union Oil Co.*, 129 Cal.App.2d 558 [277 P.2d 464], the collective bargaining agreement involved provided for grievance procedures consisting of seven detailed and specific steps, from initiation of the grievance to final arbitration in the event settlement of the dispute should not be effected. On defendant's motion for summary judgment it was undisputed that plaintiff had not first exhausted the arbitration procedures available to him under the agreement. In affirming the judgment the court said (at pages 563-564) : ''It is the general rule that a party to a collective bargaining contract which provides grievance and arbitration machinery for the settlement of disputes within the scope of such contract must exhaust these internal remedies before resorting to the courts in the absence of facts which would excuse him from pursuing such remedies. (Citing cases.) This rule, which is analogous to the rule requiring the exhaustion of administrative remedies as a condition precedent to resorting to the courts (2 Cal.Jur.2d 304, § 184), is based on a practical approach to the myriad problems, complaints and grievances that arise under a collective bargaining agreement. It makes possible the settlement of such matters by a simple, expeditious and inexpensive procedure, and by persons who, generally, are intimately familiar therewith. (*Utah Const. Co.* v. *Western Pac. R. Co.*, 174 Cal. 156, 159 [162 P. 631].) The use of these internal remedies for the adjustment of grievances is designed not only to promote settlement thereof but also to foster more harmonious employee-employer relations. (*Myers* v. *Richfield Oil Corp.*, 98 Cal.App.2d 667, 671 [220

P.2d 973].) Such procedures, which have been worked out and adopted by the parties themselves, must be pursued to their conclusion before judicial action may be instituted unless circumstances exist which would excuse the failure to follow through with the contract remedies. (Citing cases.)''

In *Holderby* v. *International Union etc. Engineers,* 45 Cal. 2d 843 [291 P.2d 463], the court said (at page 846):

''It is the general and well established jurisdictional rule that a plaintiff who seeks judicial relief against an organization of which he is a member must first invoke and exhaust the remedies provided by that organization applicable to his grievance. (Citing cases.) This rule is analogous to the rule requiring the exhaustion of administrative remedies as a condition precedent to resorting to the courts (see 2 Cal.Jur.2d, 304), and to the rule requiring the parties to a contract for arbitration of disputes to exhaust those remedies before seeking judicial relief. (See *Cone* v. *Union Oil Co.,* 129 Cal. App.2d 558 [277 P.2d 464] . . . , and cases collected at p. 563.) Such rules are based on a practical approach to the solution of internal problems, complaints and grievances that arise between parties functioning pursuant to special and complex agreements or other arrangements. They make possible the settlement of such matters by simple, expeditious and inexpensive procedures, and by persons, who, generally, are familiar therewith. Such internal remedies are designed not only to promote the settlement of grievances but also to promote more harmonious relationships, and the courts look with favor upon them.''

In the instant case, plaintiffs having failed to allege either that they had exhausted their administrative remedies by submitting the dispute to an arbitration committee, as provided in the agreement, or the existence of any circumstance which would excuse the failure to follow through with the contract remedies, the trial court properly sustained the demurrer and granted defendant's motion to dismiss upon the plaintiffs' refusing to amend their complaint.

Judgment affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied January 10, 1957, and appellants' petition for a hearing by the Supreme Court was denied February 13, 1957.