[Civ. No. 18450. First Dist., Div. One. Jan. 4, 1960.]

MARVIN J. GRIGGS, Appellant, v. TRANSOCEAN AIR LINES (a Corporation), Respondent.

Raymond N. Baker for Appellant.

Ricksen, Freeman, Hogan & Vendt, Carl R. Vendt, Richard Ernst and Richard G. Logan for Respondent.

DEVINE, J. pro tem.*—Plaintiff, Marvin J. Griggs, appeals from a judgment which was rendered in favor of defendant upon the special defense that plaintiff had not submitted to arbitration the subject matter of the litigation and that the collective bargaining agreement which covered him required him to seek arbitration.

Appellant was employed as an air pilot by defendant in 1946 upon an agreement that all of the terms and conditions of his employment would be controlled by certain contracts between the Air Lines Pilots, a labor organization, and Transocean Air Lines, the employer. On March 9, 1951, appellant was discharged from his employment. On March 15, 1951,

---

*Assigned by Chairman of Judicial Council.

he wrote to the chief pilot of Transocean, setting forth what he termed "claims and grievances," requested a complete audit of flight records in order to determine the compensation to which he claimed to be entitled, and asked for prompt disposition of the grievances. Writing to the chief pilot would be the first step of compliance with the procedure for settlement of grievances under the collective bargaining agreement.

The grievances described in appellant's letter are the same claims as those made in the complaint in the superior court action, although they are expressed somewhat differently. The complaint contains a count for damages for alleged wrongful discharge, but appellant has abandoned that claim, conceding that on that subject the collective bargaining agreement is so specific in its requirement for arbitration, which appellant admittedly did not follow, that the sustaining of the special defense was justified.

Just how far he carried his other claims, which are described below, in the administrative procedures, does not appear clearly, but it is conceded by appellant that he did not seek arbitration, which is the last step established by the collective bargaining agreement for the settlement of grievances. At one point in his brief appellant suggests a failure of a hearing officer to make a final decision, but the point was not raised in the superior court and the record is silent on the subject, so the point is not considered further.

Not having recourse to arbitration, nor proposing it, appellant filed his complaint in the superior court. There is no allegation in the complaint of failure, refusal, or unwillingness on the part of appellant's labor organization to act on his behalf in arbitration, nor has that organization sought to intervene here. Besides the now abandoned cause of action for wrongful discharge, the complaint seeks judgment for alleged: (1) unpaid wages, generally; (2) wages unpaid under the terms of a certain decision of the National Labor Relations Board affecting pilots (appellant was not party to the N.L.R.B. case itself); (3) vacation pay; (4) wages due because of violation of appellant's seniority rights; (5) living expenses of appellant while he was assigned to a post away from his base station; (6) out of pocket sums paid by appellant for the maintenance and operation of his employer's aircraft.

In addition to general denials there was pleaded the special defense that appellant had not had recourse to arbitration, and this issue was tried separately under the provisions of

section 597 of the Code of Civil Procedure and judgment thereon was rendered in favor of defendant.

It is appellant's contention that his claims are not arbitrable grievances and that he may demand adjudication by the courts without reference to arbitration. He argues that arbitrable grievances are disputes in the labor-management field which do not include individual or group money claims for alleged unpaid sums, such as are described in his complaint. He declares that he seeks no interpretation of the collective bargaining agreement, but simply pay, expenses and the like, as detailed above, and that such matters need not be arbitrated.

Section 25 of the collective bargaining agreement, under grievances, reads as follows: "Any pilot, or group of pilots hereunder, who have a grievance concerning any action of the Company affecting them shall be entitled to have such grievance handled in accordance with the procedure established in Section 24 hereof, for investigation and hearing cases of discipline and dismissal." Section 24 gives the procedure for cases of discipline and dismissal. The final step in that procedure is arbitration by a board of adjustment selected by both company and union and established in compliance with section 204, title II of the Railway Labor Act (45 U.S.C.A. § 184).

The arbitration agreement provides that "The Board shall have jurisdiction over disputes between any employee covered by the Pilots' Agreement and the Company, growing out of grievances or out of interpretation or application of any of the terms of the Pilots' Agreement."

■■ The fact that the collective bargaining agreement in section 25 uses the words "shall be entitled" to arbitration does not mean that its use is merely permissive. An employee who is entitled to the benefit of arbitration must have recourse to it as to all claims which are arbitrable even though the agreement does not expressly require that to be done. (*Hagin* v. *Pacific Gas & Elec. Co.*, 152 Cal.App.2d 93 [312 P.2d 356] ; *Williams* v. *Pacific Elec. Ry. Co.*, 147 Cal.App.2d 1 [304 P.2d 715].)

An arbitration agreement of the nature of that made by the parties hereto is made mandatory by the Railway Labor Act. (45 U.S.C.A. § 184.) However, the question whether or not administrative remedies must be exhausted depends on the policy of the state in which a breach of contract action is brought. (*Transcontinental & Western Air, Inc.* v. *Koppal*, 345 U.S. 653 [73 S.Ct. 906, 97 L.Ed. 1325].)

 The policy of the law of California is exceedingly favorable to arbitration in the matter of collective bargaining agreements. (*Levy* v. *Superior Court*, 15 Cal.2d 692 [104 P.2d 770, 129 A.L.R. 956]; *Myers* v. *Richfield Oil Corp.*, 98 Cal.App.2d 667 [220 P.2d 973].) Wherever arbitration has been agreed upon as the means of settling a dispute or grievance, and fair and effective arbitration is available, the parties must have recourse to it. A few recent cases, together with a very brief description of their subject matter, applying this rule are these: *Williams* v. *Pacific Elec. Ry. Co.*, *supra*, 147 Cal.App.2d 1, involving an employee's claim for displacement allowance when certain trains were discontinued; *Cone* v. *Union Oil Co.*, 129 Cal.App.2d 558 [277 P.2d 464], concerning alleged denial of plaintiff's seniority rights; and *Hagin* v. *Pacific Gas & Elec. Co.*, *supra*, 152 Cal.App.2d 93, in which employees sought recovery for expenses to which they alleged they had been put.

That the law of California does require exhaustion of administrative remedies has been recognized by the Circuit Court of Appeals, Ninth Circuit, in a case involving an agreement executed under the Railway Labor Act. (*Barker* v. *Southern Pac. Co.* (9th Circ.), 214 F.2d 918.)

Even the statements of subject matter of the California cases given above may be sufficient to show the merits of the special defense in this one, but in those cases the specific arguments, which are made by appellant against arbitrability of claims of the type involved herein, were not advanced.

 The first argument of appellant against arbitrability is that the word "grievances" does not include an employee's claim for unpaid sums which do not have to do with the larger disputes in the labor-management field, and appellant cites the case of *National Labor Relations Board* v. *Associated Machines*, 219 F.2d 433. That case does indeed hold that "grievances" are to be considered major disputes, but the case is in an entirely different field. It was held that a company committee which, among other things, listens to complaints of employees. was not a labor organization under section 2(5) of the National Labor Relations Act, 29 U.S.C.A. 152(5), which defines a labor organization as one "dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." Applying the doctrine *noscitur a sociis*, the court held that grievances, as used in the statute, meant major disputes. The case did not involve arbitration at all, and the court not only did not purport to

make the term "grievances" as applied to the particular statute a general definition of the word, but expressly pointed out that the word "grievances" in its popular sense was broader. (Incidentally, since we are obliged to state the holding of Associated Machines, we should mention that the case perhaps is not authoritative in its own field since the recent decision of *N.L.R.B.* v. *Cabot Carbon Co.*, 360 U.S. 203 [79 S.Ct. 1015, 3 L.Ed.2d 1175].)

It has been held specifically in other federal cases that wage claims are arbitrable. (*Donahue* v. *Susquehanna Collieries Co.*, 138 F.2d 3 [149 A.L.R. 271] ; *Evans* v. *Hudson Coal Co.*, 165 F.2d 970—cases arising under Fair Labor Standards Act, 29 U.S.C.A. § 201.)

The next argument of appellant is based on the "no dispute" rule, and he cites cases supporting that rule, namely, *Textile Workers Union* v. *Firestone Plastics Division*, 6 N.J. Super. 235 [70 A. 880]. These cases are based upon the holdings of *International Ass'n of Machinists* v. *Cutler-Hammer*, 67 N.Y.S.2d 317, affirmed, 297 N.Y. 519 [74 N.E. 2d 464], which has become such a leading case on the "no dispute rule" that the rule is sometimes called the "Cutler-Hammer doctrine" (e.g. Wollett, *Labor Relations Law* ; 33 N.Y.U.L.Rev. 1107, 1116 ; Cox, *Reflections Upon Labor Arbitration*, 72 Harv. L.Rev. 1482, 1513 ; Kharas and Koretz, *Judicial Determination of the Arbitrable Issue in Labor Determination*, 7 Syracuse L.Rev. 193, 198). The rule is this: If the purported "issue" presented for arbitration by one of the parties to the collective bargaining agreement really is no issue at all because the claim clearly conflicts, in its very terms, with specific provisions of the collective agreement itself, then the claim is frivolous, creates no dispute, and need not be submitted to arbitration. The courts will deal with such a claim summarily, and, if it has got into the courts, will not send it therefrom to arbitrators, because that would be futile, and, in certain cases at least, will stay arbitration if it is about to proceed. Thus, in the Cutler-Hammer case, *supra,* the agreement was that early in July, 1946, the union and the company would "discuss" payment of a bonus. They did discuss it, but the company declined to pay it, and the union took the position that a bonus must be paid. The court stayed arbitration on the ground that there was no arbitrable dispute. In the Textile Workers case, *supra,* the agreement provided vacations with pay for the employees only who had a certain tenure with the company; the union sought arbitration to include other

employees; the court held that to do so would be to vary the terms of the written agreement, and that there was no arbitrable issue under the agreement.

The Cutler-Hammer rule was applied in this state in the case of *Pari-Mutuel etc. Guild* v. *Los Angeles Turf Club*, 169 Cal.App.2d 571 [337 P.2d 575], in which the court, citing the Cutler-Hammer case, held that where the agreement specifically required pari-mutuel operators to perform certain work, there was no room for arbitrating the question whether it was an undue burden for all of those employees to do the specific work that the agreement required them to do.

The "no dispute" rule has no application to the case before us because there is no repugnancy between the terms of the claim and the terms of the agreement. Nothing appears from comparison of the claim with the agreement to show either the claim or the defense is unsubstantial. There is a contention that, factually, there was a breach of the agreement in that amounts due were not paid, and a denial that amounts due are unpaid. Evidence must be produced and, perhaps, the agreement must be construed. This is a "dispute" as surely as dispute exists in any breach of contract case. It is a prime subject for arbitration under the contract.

The arbitration clause in the bargaining agreement is broad. It covers any grievance "concerning any action of the Company affecting" pilots. It covers grievances even if they may be proved easily. But a seemingly simple claim of breach of contract to pay wages may become exceedingly complex (Cox, *Rights Under a Labor Agreement*, 69 Harv.L.Rev. 606), and judges know what problems may emerge even from such a simple pleading as the common count. Besides, it would seem that the matter is not of extreme simplicity, because appellant in his letter called upon the company to produce a complete audit of his flight records.

In the arbitration agreement, jurisdiction is given over disputes "growing out of grievances *or* out of interpretation or application of any of the terms of the Pilots' Agreement" (italics added), indicating that grievances are to be distinguished from disputes calling for interpretation of the contract and hence include claims for breach of contract where the only issues may be factual.

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.